IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Marsha R. Thompson, | ) | C/A No. 3:10-2003-MBS-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Harvest Hope Food Bank, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, Marsha R. Thompson ("Thompson"), filed this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., ("Title VII"), against her former employer, Harvest Hope Food Bank ("Harvest Hope"). Thompson asserts claims for religious discrimination and retaliation. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 24.) Thompson filed a response in opposition (ECF No. 41) and the defendant filed a reply (ECF No. 43). Having reviewed the parties' submissions and the applicable law, the court concludes that Harvest Hope's motion should be granted.

**BACKGROUND**

The following facts are either undisputed or are taken in the light most favorable to Thompson, to the extent they are supported by the record. In 2008, the Executive Director of Harvest Hope, Denise Holland, hired Thompson, who is Jewish, as Director of Communications. Following Thompson's probationary period, Holland gave Thompson a positive review and increased her salary.

PJG

During the summer of 2008, Holland's daughter Memory was working at Harvest Hope as an intern. According to Thompson, at some point Memory Holland observed that Thompson was absent and accounted for Thompson's absence by speculating aloud that it was a Jewish holiday. Thompson later learned about this conversation from a co-worker who overheard it.

In January of 2009 Holland promoted Thompson to Chief Development Officer. Although Thompson had requested that her transition to that position be delayed, her duties as Chief Development Officer commenced immediately. The parties' accounts of the next few months differ, but it appears to be undisputed that Thompson found herself overextended in her new job. Consequently, in April, Thompson resigned her position as Chief Development Officer and asked to return to her former position as Director of Communications. Holland agreed but asked Thompson to serve as interim Chief Development Officer for a time.

In early June, Harvest Hope received, within an approximate two-week period, multiple complaints about Thompson's job performance from four different co-workers. Holland presented Thompson with a memorandum outlining Harvest Hope's expectations about Thompson's job performance. This coincided with Thompson's return to her role in communications. Thompson's salary was decreased at that time commensurate with the change in position.

On August 5, 2009, Harvest Hope issued Thompson a written warning for failing to arrange media coverage regarding a large amount of food being presented to Harvest Hope by one of its corporate donors. A few days later, Elizabeth Quackenbush was hired as the new Chief Development Officer. Not long after, Holland terminated Thompson's employment with Harvest Hope effective August 18, 2009. Three other employees were also terminated; all were non-Jewish.



Thompson filed an administrative charge alleging disparate treatment based on her religion and retaliation. This action followed.

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine



whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     Burden Shifting Framework in Employment Cases**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas frame-work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks & citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).




Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

PJG

**C.     Thompson's Claim of Disparate Treatment Based on Religion[1]**

To obtain relief based upon alleged discrimination under Title VII, a plaintiff must demonstrate that: (1) she is a member of the protected class;[2] (2) she suffered an adverse employment action; (3) at the time of the adverse action, she was performing at a level that met the employer's legitimate expectations; and (4) her position remained open was filled by a similarly qualified individual outside the protected class. Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2005) (citing Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004) (*en banc*)); see also Booth v. Maryland, 337 F. App'x 301, 309 (4th Cir. July 21, 2009) (applying the *prima facie* test to a Title VII claim for disparate treatment based on religion). Thompson's claim fails because she cannot meet the third and fourth prongs.

First, Thompson cannot satisfy the *prima facie* requirements because she cannot demonstrate that she was meeting Harvest Hope's legitimate expectations. The relevant time to evaluate an employee's performance is at the time of the adverse action. See, e.g, Miles, 429 F.3d at 485 (stating that the third factor of a *prima facie* case includes that "she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action").

---

[1] As the defendant points out, Thompson does not appear to be raising a claim that the defendant failed to accommodate her religion or a claim of religious harassment.

[2] Harvest Hope argues in its memorandum that Thompson is not a member of a protected class because, although she indisputably observes Jewish holidays, she is not a member of any synagogue and does not devoutly practice Judaism. This court declines to find in the disparate treatment context that Thompson is not in the protected class merely because the defendant challenges the level of her devotion to her faith. Nothing in the *prima facie* test for disparate treatment appears to require a plaintiff to establish any requisite level of adherence to the tenets of his or her chosen faith. Cf. E.E.O.C. v. Firestone Fibers & Textiles Co., 515 F.3d 307, 312 (4th Cir. 2008) (including as part of the *prima facie* case in religious accommodation cases that a plaintiff demonstrate a "bona fide religious belief").



Moreover, in determining satisfactory job performance, it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (stating that plaintiff's own testimony of satisfactory job performance cannot establish a genuine issue as to whether he was meeting his employer's expectations in a race discrimination case) (citing Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996)). An employer's expectations of its employees are "legitimate" when they are honestly held; whether the employee agrees with those expectations is not the test. See Holland v. Wash. Homes, Inc., 487 F.3d 208, 217-18 (4th Cir. 2007) (concluding that no reasonable juror could conclude the decision maker's reason was pretextual where the plaintiff's evidence "failed to address whether [the decision maker] did not honestly believe that the threats were made" and noting that " '[i]t is the perception of the decisionmaker which is relevant.' ") (quoting Tinsley v. First Union Nat'l Bank, 155 F.3d 435 (4th Cir.1998)). In this context, the term "legitimate" means that expectations cannot be a " 'sham designed to hide the employer's discriminatory purpose.' "  Warch, 435 F.3d at 518 (quoting Brummet v. Lee Enters., Inc., 284 F.3d 742, 745 (7th Cir. 2002)). As long as the requirements imposed are bona fide expectations, it is not the court's province to determine whether an employer demands too much of its workers. Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir. 1997) (Posner, J.).

The record contains abundant evidence that between April 2009 and Thompson's termination in August of that year, Harvest Hope perceived Thompson's job performance to be deficient. For example, in early 2009 Harvest Hope had problems with several employees, including Thompson, who were failing to attend special events. This led to a policy issued May 6, which all employees

were required to sign, regarding attendance at such events. Despite this, Thompson continued to miss events that Harvest Hope expected her to attend.

Further, Thompson's co-workers complained to management that she neglected her duties related to the Harvest Hope newsletter and annual report, as well as her handling of media contact and press releases. (ECF No. 24-9 at 3, 4-5, 12, 13-14.) One co-worker complained that Thompson referred a reporter from the *New York Times* to her regarding an issue with which she was unfamiliar and without providing any prior warning. (ECF No. 24-9 at 3.) Another expressed dissatisfaction that Thompson was not meeting with the development department; not passing along information from the development committee to the development department; failing to provide timely information needed for the annual report; failing to provide information for the newsletter; and failing to participate in various special events. (ECF No. 24-9 at 4-5.) Further, Harvest Hope's Chief Operating Officer found fault with Thompson's level of preparation for an event, including a press release drafted by Thompson that he described as "unintelligible." (ECF No. 24-9 at 12.) Finally, one of the staff working under Thompson's supervision complained that Thompson was unavailable for events and provided no support or guidance. (ECF No. 24-9 at 13-34.)

Holland issued Thompson a memorandum outlining her duties very specifically and warning her that "[f]ailure to comply with these expectations will result in further disciplinary action up to and including termination." (ECF No. 24-3 at 18.) Although Thompson takes issue with Harvest Hope's evaluation of her job performance, offering various explanations for the deficiencies identified by Harvest Hope, she cannot show that Harvest Hope's expectations were not honestly held. See Holland, 487 F.3d at 217-18; Coco, 128 F.3d at 1179. At most, credited by a jury, her explanations as to the incidents described above might establish that Harvest Hope was too

demanding or that it unjustifiably blamed her for the problems it perceived. But this is insufficient to show discrimination based on her religion. See Miles, 429 F.3d at 485 (stating that the third factor of a *prima facie* case includes that "she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action"); King, 328 F.3d at 149 (stating that plaintiff's own testimony of satisfactory job performance cannot establish a genuine issue as to whether he was meeting his employer's expectations in a race discrimination case); see also Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000) ("[W]hen an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, 'it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.' ") (quoting DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998)).

Moreover, as noted above, a plaintiff asserting discriminatory discharge generally must show that her position remained open or was filled by a similarly qualified individual outside the protected class. Miles, 429 F.3d at 485. As Harvest Hope points out in its motion, Thompson has introduced no evidence regarding this requisite element.

Nor does the record reveal any other circumstances permitting an inference of discrimination based on Thompson's religion. See, e.g., E.E.O.C. v. Sears Roebuck & Co., 243 F.3d 846, 851 & n.2 (4th Cir. 2001) (noting that "[w]hat is critical with respect to the fourth element [of the *prima facie* test] is that the plaintiff demonstrate he was not hired (or fired or not promoted, etc.) 'under circumstances which give rise to an inference of unlawful discrimination' ") (quoting Burdine, 450 U.S. at 253). To the contrary, the fact that Holland terminated Thompson within a relatively short time of hiring and promoting her creates a strong inference of *non*discrimination. See Proud v.



Stone, 945 F.2d 796, 797 (4th Cir. 1991) (ADEA) ("[I]n cases where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer."). Furthermore, the record shows that Thompson herself has offered various other explanations for her termination that undermine her claim that she suffered discrimination based on her religion. For example, Thompson stated in her rebuttal to Harvest Hope's response in the administrative proceedings that Holland "began" to treat her "in a less than polite and . . . less than professional manner" after Thompson refused to hire a Harvest Hope board member's daughter. (Thompson Dep. Ex. 26 at P452, ECF No. 24-3 at 41.) Thompson also pinpoints the change in Holland's attitude toward her to the time that Thompson resigned as Chief Development Officer. (Id. at P453, ECF No. 24-3 at 42.) Crediting Thompson's evidence, these events were long after Holland became aware that Thompson was Jewish. Thompson's assertions of nepotism and discord surrounding her change in position undermine Thompson's claim that she was terminated due to her religion. Cf. Lightner v. City of Wilmington, 545 F.3d 260, 264-65 (4th Cir. 2008) (holding that a plaintiff's admission that he believed he was suspended and fired to stop his internal investigation undermined his claim and any inferences that it was based on race or gender).

Thus, Thompson cannot establish a *prima facie* case of discriminatory treatment based on her religion.³  Further, viewing the record as a whole, Thompson has failed to present evidence that she was the victim of unlawful discrimination.  See Merritt, 601 F.3d at 294-95.

**D.     Retaliation**

Thompson's retaliation claim similarly fails as a matter of law.  Title VII makes it unlawful for an employer to retaliate against an employee for engaging in activity protected by the statute.  See 42 U.S.C. § 2000e-3(a).  In a typical retaliation case, a plaintiff must show that: "(1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action."  Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008); Holland, 487 F.3d at 218.  To satisfy the second element, a plaintiff must show that a reasonable employee would have found the challenged action "materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a

---

³ Even if Thompson could muster enough evidence to pass the *prima facie* test, she cannot show, for all of the reasons discussed above, that Harvest Hope's stated reason for her termination was a pretext for religious discrimination.  Her reliance on Memory Holland's isolated remark nearly a year before her termination is simply insufficient to show that Harvest Hope's stated reason for terminating her was untrue or that discriminatory animus based upon her religion was the real reason for her discharge.  See Merritt, 601 F.3d at 300 ("It is the decision maker's intent that remains crucial, and in the absence of a clear nexus with the employment decision in question, the materiality of stray or isolated remarks is substantially reduced."); Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir. 1999) ("[T]o prove discriminatory animus, the derogatory remark cannot be stray or isolated and unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of discrimination.") (internal quotation marks and alterations omitted), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003); see also Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 36 (1st Cir. 2001) (holding that "stray remarks may be *material* to the pretext inquiry, their *probativeness is circumscribed* if they were made in a situation temporally remote from the date of the employment decision, *or* . . . were not related to the employment decision in question, *or* were made by nondecisionmakers") (internal quotation marks and citation omitted) (emphasis and alteration in original).



charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks & citations omitted).

"Protected activity" under the statute falls into one of two categories: opposition or participation.[4] Crawford v. Metro. Gov't of Nashville & Davidson County, 555 U.S. 271, 274 (2009); Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 257 (4th Cir. 1998). "Oppose" means "to resist or antagonize . . . ; to contend against; to confront; resist; withstand." Crawford, 555 U.S. at 276 (alteration in original) (quoting Webster's New International Dictionary 1710 (2d ed. 1958)). Although an employee need not instigate or initiate a complaint to be covered by the opposition clause, id. at 277; see also Laughlin, 149 F.3d at 259, to establish that she engaged in protected opposition activity, a plaintiff must show that she opposed an unlawful employment practice which she reasonably believed had occurred or was occurring. See Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003).

Thompson cannot establish a *prima facie* case of retaliation. First, she has not identified any activity protected by Title VII that would support the first element. While she contends that she opposed race discrimination by Harvest Hope, she points to no evidence to substantiate this. Rather, the only purported opposition activity she identifies in her response to Harvest Hope's motion is that she "supported" co-worker Vermell Pyatt (who is black) when Pyatt allegedly refused to alter data for a report.[5] Such a vague, tenuous assertion cannot be considered resisting, withstanding, or

---

[4] Participation, which receives broader protection than opposition conduct, includes: "(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing" under Title VII. See Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998).

[5] The defendant points out that Thompson raises this assertion regarding her support of Pyatt for the first time in opposition to summary judgment.



confronting race discrimination.  See Crawford, 555 U.S. at 276.  Moreover, even if such nebulous support of a co-worker—regarding an issue wholly unconnected by any evidence to any practice *made unlawful by Title VII*—could be considered opposition activity, she presents no evidence that the individuals who made the termination decision were aware of her purported opposition activity.  By contrast, the unrefuted evidence shows that she never reported any racially discriminatory behavior by others to management or complained to Harvest Hope about it in any way.  (See Thompson Dep. at 111:6-21, ECF No. 24-2 at 40.)  Accordingly, she can show no causal connection between any protected activity and her termination.  See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) (stating that "the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary" to establish a causal connection between the protected activity and the asserted adverse action in a Title VII retaliation case).

## RECOMMENDATION

Thompson's claims fail as a matter of law.  The court therefore recommends that the defendant's motion for summary judgment (ECF No. 24) be granted.

*[signature]*
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 16, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).