IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Marsha R. Thompson, ) | |
| ) | C/A No. 3:10-2003-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| Harvest Hope Food Bank, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff Marsha R. Anderson is a former employee of Defendant Harvest Hope Food Bank ("Harvest Hope"), a nonprofit organization. Plaintiff filed a complaint on July 30, 2010, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). Plaintiff, who is Jewish, alleges that she has been subjected to religious discrimination and retaliation in violation of Title VII. ECF No. 1. Specifically, Plaintiff alleges that her employment was terminated because she is Jewish and because she "objected to the racial discrimination she observed of black employees." *Id.* at 3-4.

This matter is before the court on a motion for summary judgment filed by Defendant on August 3, 2011. ECF No. 24. Plaintiff filed a response in opposition to Defendant's motion on December 5, 2011. ECF No. 41. Defendant filed a reply on December 15, 2011. ECF No. 43. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., the within action was referred to United States Magistrate Judge Paige J. Gossett for pretrial handling. On January 17, 2012, the Magistrate Judge issued a Report and Recommendation in which she recommended that Defendant's motion for summary judgment be granted. ECF No. 44. Plaintiff filed

objections to the Report and Recommendation on February 3, 2012. ECF No. 45. Defendant filed a response on February 21, 2012. ECF No. 46.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

## **FACTS**

The following facts are either undisputed or taken in the light most favorable to Plaintiff, to the extent they are supported by evidence in the record. In May 2008, Plaintiff was hired by Denise Holland ("Holland"), Executive Director of Harvest Hope, to be Director of Communications for Harvest Hope.[1] ECF No. 1 at 2. In August 2008, Plaintiff received a positive performance evaluation and felt that she had a good relationship with Holland at that time. ECF No. 41-3 at 17. During the summer or fall of 2008, Holland's seventeen-year-old daughter, Memory, worked for Harvest Hope as an intern. *Id.* at 22-23. On one occasion Memory noted that Plaintiff was absent and speculated to co-workers that it must be a Jewish holiday. ECF No. 41-4 at 6. Plaintiff was informed about this comment by her co-workers. ECF No. 41-3 at 22. Although Plaintiff did not make a formal complaint to Human Resources

---

[1] The Director of Communications is under the mantle of the Development Department. ECF No. 41-3 at 19.

about this comment, Plaintiff later discussed it with Amy Lowery, Memory's supervisor. *Id.* at 23-24; ECF No. 41-4 at 6. Lowery was very apologetic and stated that this would not happen again. ECF No. 41-3 at 24. Plaintiff felt that no other action was needed at that time. *Id.*

In January 2009, Holland offered Plaintiff the job of Chief Development Officer, with a corresponding pay increase, and Plaintiff accepted. ECF No. 41-3 at 18 & 21. Plaintiff stated that she would not be able to start the new job until March due to her current workload. *Id.* at 21. However, "immediately after that meeting . . . Holland announced . . . that [Plaintiff] was to be Chief Development Officer and reporting would start immediately." *Id.* at 21. Plaintiff was faced with new time-consuming responsibilities and had difficulty managing her workload. *See* ECF No. 41-4 at 6-8. In April 2009, Plaintiff resigned from her position and requested that Holland allow her to resume her duties as Director of Communications. *Id.* at 9. Holland agreed, although Plaintiff's salary was reduced and she was required to continue handling some of the duties she had performed as Chief Development Officer. *Id.*

In June 2009, four of Plaintiff's co-workers submitted complaints about her within an eleven-day period. ECF No. 24-9 at 3-32. On June 22, 2009, Holland presented Plaintiff with a memorandum outlining "immediate job performance expectations" and stating that "[f]ailure to comply with these expectations will result in further disciplinary action up to and including termination." ECF No. 41-1 at 28-29. On August 5, 2009, Plaintiff was issued a "corrective action notice" for failing to arrange media coverage of a food donation. ECF No. 24-3 at 24. On August 21, 2009, Plaintiff's employment was terminated. Plaintiff was given a letter dated August 18, 2009, stating that the "decision is based on a number of concerns, including [Plaintiff's] persistent neglect of duties as the Director of Communications." ECF No. 24-3 at

26.

According to Defendant, Elizabeth Quackenbush ("Quackenbush") was hired as the new Chief Development Officer on August 10, 2009. ECF No. 24-1 at 10. Quackenbush was asked to review all current Development Department employees "in light of several recent embarrassing incidents caused by employees in that department." *Id.* Quackenbush formed the opinion that Plaintiff was unqualified for her position. ECF No. 24-8. After consulting with Quackenbush and McLellan, Holland decided on August 21, 2009, to terminate the employment of four Development Department employees, including Plaintiff. ECF No. 24-1 at 11. Of these four employees, only Plaintiff is Jewish. *Id.*

## **STANDARD OF REVIEW**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted when a moving party has shown "[that] the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The facts and any inferences drawn from the facts should be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The party seeking summary judgment bears the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party makes this showing, the opposing party must set forth specific facts showing there is a genuine issue for trial. *Id.*

4

**DISCUSSION**

**I.     Religious Discrimination**

A plaintiff may demonstrate discrimination using direct or circumstantial evidence. Absent direct evidence, a plaintiff alleging that her employment was terminated for discriminatory reasons "must establish a prima facie case of discrimination by showing that '(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.'" *Miles v. Dell, Inc.*, 429 F.3d 480, 485 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc)). Once a plaintiff establishes a prima facie case of discrimination, "the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory justification for its allegedly discriminatory action." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010). If the employer carries this burden, the plaintiff must then "prove by a preponderance of the evidence that the neutral reasons offered by the employer were not its true reasons, but were a pretext for discrimination." *Id.* (quotation omitted). In other words, the plaintiff must ultimately prove that she was the victim of intentional discrimination. *Id.*

**A.     The Magistrate Judge's Report and Recommendation**

The Magistrate Judge found that Plaintiff had not established a prima facie case of discrimination because she had not proven factors three and four listed above. ECF No. 44 at 6. The Magistrate Judge found that Plaintiff had not shown that she was meeting her employer's legitimate expectations at the time of her termination because "[t]he record contains abundant

evidence that between April 2009 and [Plaintiff's] termination in August of that year, Harvest Hope perceived [Plaintiff's] job performance to be deficient." *Id.* at 7. The Magistrate Judge also found that Plaintiff had introduced no evidence pertaining to whether her position had been left open or filled by a similarly qualified individual outside the protected class. *Id.* at 9.

However, assuming that Plaintiff had established a prima facie case of discrimination, the Magistrate Judge found that Plaintiff had not produced evidence sufficient to permit an inference that Harvest Hope's offered reasons were a pretext for religious discrimination. ECF No. 44 at 9. The Magistrate Judge noted that it is the employer's perception that matters in determining whether given reasons are a pretext for discrimination. *Id.* at 7 (citing *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 518; *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003)). That is, unless the employer's expectations are a "sham designed to hide the employer's discriminatory purpose" and therefore not "legitimate," it does not matter whether the employer is reasonable or correct in its belief that the employee is not meeting these expectations. ECF No. 44 at 7 & 9. The Magistrate Judge also noted that Holland terminated Plaintiff within a relatively short time of hiring and promoting her, and found that this creates a strong inference of nondiscrimination. *Id.* at 9-10 (citing *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991) ("[I]n cases where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer.")). Finally, the Magistrate Judge found that Plaintiff had offered various other explanations for her termination, undermining her claim that she was terminated based on religious discrimination. *Id.* at 10.

### B. Plaintiff's Objections

Plaintiff first objects that the Magistrate Judge "erred in finding that the Plaintiff was not meeting her employer's legitimate expectations." ECF No. 45 at 2. Plaintiff goes on to explain and provide her own version of several occasions on which Harvest Hope stated that Plaintiff had not met its expectations. Plaintiff argues that because "she was able to and did rebut the complaints against her," she "was meeting the *legitimate* expectations of her employer." *Id.* (emphasis added by Plaintiff). As the Magistrate Judge explained, the issue is not whether Harvest Hope was unreasonable or unfair in blaming Plaintiff for these shortcomings – the issue is whether Plaintiff was fired because of her religion. Even if Plaintiff is correct in stating that the complaints against her were false, she has not shown that Holland and other decision-makers at Harvest Hope believed them to be false. More importantly, Plaintiff has not provided any evidence that could lead a reasonable fact-finder to conclude that Harvest Hope's concern with these complaints was merely a "sham designed to hide [a] discriminatory purpose." Accordingly, Plaintiff's first objection is without merit.

Plaintiff also objects that the Magistrate Judge "erred in applying the same-actor inference against discrimination standard in a Title VII case." ECF No. 45 at 3. Plaintiff notes that the case cited by the Magistrate Judge for this proposition, *Proud v. Stone*, dealt with the Age Discrimination in Employment Act rather than Title VII, and argues that such a standard should not be applied in a Title VII religious discrimination case. Plaintiff further argues that, assuming the same-actor inference against discrimination exists in Title VII cases, it should not apply in this case because there is no evidence that Holland knew Plaintiff was Jewish at the time she was hired. Finally, Plaintiff argues that the fifteen months between her hiring and

7

termination is not the "relatively short time span" contemplated by *Proud*, which involved a time span of six months.

The holding in *Proud* was based on the premise that "[i]t hardly makes sense to hire workers from a group one dislikes . . . only to fire them once they are on the job." *Proud*, 945 F.2d at 797. This reasoning applies with the same force to any type of discrimination, and in fact has been explicitly adopted by the Fourth Circuit in Title VII cases. *See Evans v. Technologies Applications & Svc. Co.*, 80 F.3d 954, 959 (4th Cir. 1996). Furthermore, even if Holland was unaware of Plaintiff's religion at the time she was hired, there is no question that Holland was aware of it when she promoted Plaintiff in January 2009. By the same logic explained in *Proud*, it is difficult to understand why an employer would promote a member of a disfavored religion to a senior position within the organization only to fire her shortly thereafter. Plaintiff's employment was terminated less than seven months after her promotion, which is nearly identical to the six-month period described as a "relatively short time span" in *Proud*. Plaintiff's second objection is therefore without merit. More importantly, even without the same-actor inference against discrimination, Plaintiff has not produced evidence sufficient to support an inference that she was fired because of her religion.

## II.     Retaliation

Title VII prohibits employers from discriminating or retaliating against an employee because she has "opposed any practice made an unlawful employment practice" under Title VII or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. *See* 42 U.S.C. § 2000e-3(a). "Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and

8

voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metropolitan Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). A plaintiff alleging retaliation must prove that "(1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008).

### A. The Magistrate Judge's Report and Recommendation

The Magistrate Judge found that Plaintiff had not provided evidence showing that she engaged in activity protected by Title VII. ECF No. 44 at 12. The Magistrate Judge found that although Plaintiff claims to have "opposed race discrimination by Harvest Hope," the only such activity identified by Plaintiff is Plaintiff's "support" of a black co-worker when that co-worker refused to alter data for a report. *Id.* The Magistrate Judge found that this conduct does not constitute "opposition" to discriminatory activities. *Id.* The Magistrate Judge further found that, even assuming this conduct could be considered "opposition," there is no evidence that the persons involved in Plaintiff's termination were aware of Plaintiff's conduct and therefore no causal connection between any protected activity and Plaintiff's termination. *Id.* at 13.

### B. Plaintiff's Objections

Plaintiff objects that the Magistrate Judge "erred in finding that the Plaintiff was not engaged in a protected activity," noting that "[o]pposition . . . can include simply voicing one's opinion to bring attention to an employer's alleged discriminatory activities." ECF No. 45 at 4 (quotation omitted). Plaintiff also states that her "support of African-American employees . . . was well known and her support of [her co-worker's] refusal to alter data equally was well-

known." *Id.* at 5.  Even assuming that Plaintiff's support of her co-worker constitutes "opposition" to her employer's alleged order to alter data for a report, Plaintiff has not attempted to explain how this order had anything to do with racial discrimination.  Supporting a co-worker in a conflict with an employer does not constitute "opposition to racial discrimination" simply because the co-worker happens to be black.  Because there is no evidence of racially discriminatory activities in the record, a reasonable fact-finder could not find that Plaintiff opposed any such activities.

## CONCLUSION

After a de novo review of the record in this case, the court determines that Plaintiff's objections to the Report and Recommendation are without merit.  Accordingly, the court adopts Magistrate Judge Gossett's Report and Recommendation and incorporates it herein.  Defendant's motion for summary judgment is granted.

**IT IS SO ORDERED**.

s/ Margaret B. Seymour<br>
Margaret B. Seymour<br>
Chief United States District Judge

Columbia, South Carolina

February 23, 2012.